CASE 64—MANDAMUS—OCTOBER 29.

# Pickett, Superintendent of Public Instruction, &c., v. Harrod.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

1. COMPENSATION OF SCHOOL COMMISSIONER.—A school commissioner who was elected under the provisions of the General Statutes and held over until a county superintendent was elected and qualified under the present school law, approved May 12, 1884, is entitled to compensation as provided by the General Statutes for reporting the census of the school children of the county for the year 1884, although the service was performed after the present law went into effect.

2. SAME.—The provision of the statute requiring the commissioner to make his report of the census of the school children on or before the first day of June, was directory merely, and the commissioner was entitled to compensation, although he did not make the report until after the first day of June.

3. SAME.—It was not necessary that the report of the commissioner should show that he had visited the schools as required by the statute, the compensation allowed being, not for that service, but for reporting the census.

P. W. HARDIN, ATTORNEY-GENERAL, AND JOSEPH DESHA PICKETT, SUPERINTENDENT OF PUBLIC INSTRUCTION, FOR APPELLANT.

1. The three dollars allowed the commissioner by the statute is not merely for reporting the census of the schools, but also for the work of visiting the schools officially, and of carrying out efficiently the work in connection therewith, all of which his report must show that he has done in order to entitle him to the compensation allowed. (Gen. Stats., chap. 18, art 1, sec. 12; act Mch. 21, 1870, art. 5, secs. 6-10, 12-20 and 23; acts 1869-70, chap. 854; act Feb. 23, 1874, Gen. Stats. (1881), p. 873.)

2. The census was not reported within the time required by law, June 1, and, therefore, the commissioner is not entitled to compensation therefor. (Common School Laws, art. 5, sec. 7.)

3. The services for which appellee claims compensation were performed after May 12, 1884, the time at which the new law went into effect; and that law not only in terms repealed all laws providing for payment of the commissioners, but specifically provided that the school fund should not be applied to any other purpose than the payment of teachers. (Acts 1884, vol. 1, p. 111.)

THOMAS B. FORD FOR APPELLEE.

1. The statute expressly provides that the commissioner shall be allowed three dollars for *reporting* each district, and not for *visiting* schools. As to whether the service is worth that much is not a question for the court. (Gen. Stats., chap. 18, art. 1, sec. 12; act March 21, 1870, art. 5, sec. 7.)

2. As the new school law provides that " the commissioners now in office shall hold their offices until the county superintendent is elected and qualified," and appellee held over under that provision, he is entitled to the compensation allowed by the former law.

GEO. C. DRANE OF COUNSEL ON SAME SIDE.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The object of this action is to compel the appellant, as Superintendent of Public Instruction, by mandamus to approve the claim of the appellee, as common school commissioner for Franklin county, for reporting the census of its school children for the year 1884.

It is necessary to a proper understanding of the questions presented to cite the following provisions of chapter 18 of the General Statutes, and then some portions of the present school law, which was approved May 12, 1884. Article 1, section 11, of said chapter, is as follows :

" The judges of the county courts in each county are authorized to examine and audit the accounts for services rendered by the commissioners of common schools in their respective counties ; and for this pur-

pose they shall, between the first and twentieth days of January, and the first and twentieth days of July in each year, hear proof and audit and settle the accounts of the commissioners of their respective counties, for services rendered by them, for the six months next preceding such settlement; and the amount ascertained to be due to said commissioners shall be certified by the judge to the Superintendent of Public Instruction; and if approved by him, he shall certify the same to the Auditor of Public Accounts."
* * * *

Section 12. "The Superintendent of Public Instruction, when the distributable share due to each county is ascertained, as provided for in section 7, article 1, of said act, before making a *pro rata* distribution of said fund to the districts, shall, out of the fund ascertained to be due any given county, deduct the sum of one hundred dollars, and one per cent. on the whole amount due said county, *as well as three dollars for each school district reported by the county commissioner, according to section 7, article 4, of said law.* The fund thus created shall be denominated the county commissioners' fund, and shall remain in the Treasury to the credit of the respective counties, *subject to the certificates of allowances made by the county judges* to the commissioners for services rendered, as provided for in section 11 of article 1, common school law."

It is evident that the reference above to section 7 of article *four* is a mistake, as it does not relate to any report to be made by the commissioner, but merely declares that copies of records in the Superintendent's office shall, when certified by him, be evidence equally

with the originals; and after an examination of the entire chapter we are satisfied that the reference intended was to section 7 of article 5, which reads thus: "It shall be the duty of each commissioner, on or before the first day of June of each year, to prepare, mail to, and caused to be placed in the hands of the Superintendent of Public Instruction, a report certified by the county judge or clerk as having been sworn to by him, showing the whole number of white children between the ages of six and twenty years residing in his county, and the whole number residing in each district, described by its number, of his county. He shall base his report upon the census taken during the month of April, and reports thereof made to him by the district trustees."   *   *   *

The school law enacted since the adoption of the General Statutes provides that it shall take effect from its passage, to wit, May 12, 1884; but section 2 of article 6 says: "The county superintendent shall be elected by the qualified voters of each county at the regular August election in 1884, and every two years thereafter;"   *   *   and the next section reads thus: "The commissioners now in office shall hold their offices until the county superintendent is elected and qualified under this act; and those elected under the provisions of this law shall hold their offices for two years, or until their successors are elected and qualified."

This law, however, provides for the payment of the county superintendent by county taxation; and section 5 of article 2 says: "Hereafter, except as otherwise expressly provided in this chapter, no part of

the common school fund, or of the revenue thereof, shall be used for any other purpose than the payment of teachers of common schools, legally qualified and employed, in pursuance hereof."

The appellee did not make his census report to the Superintendent of Public Instruction until a short time after the first day of June ; but it was received, and this provision of the statute is only directory. His claim is for reporting the census of both the white and colored schools ; but his duty as to each was the same, and the manner of reporting is alike under the law. The work was done by him after the enactment of the present school law ; but it provided that he should remain in office, and, by implication, perform the duties pertaining thereto until his successor should qualify. The latter, by the provision of the new law, could not be elected until August, 1884, and the appellee, therefore, continued to hold the office until September, when his successor qualified. His claim was audited and certified by the county judge in due form ; but the Superintendent of Public Instruction, acting of course from no personal motive, but from a high conscientious regard of duty—*fidus in officio, atque ad civitatem*—refused to approve it for the same reasons that are now presented in defense of this suit :

First, because the claim did not show that the commissioner had visited the schools.

Second, because the services were rendered after the passage of the new school law, which dedicated the school fund to the payment of the teachers.

Waiving the question whether the Superintendent of Public Instruction had the right to refuse to approve

the claim if it was correct in form, and had been audited and certified by the county judge, it appears to us that the law did not require it to show any thing further than that the commissioner had reported the census of the schools. To do so, he did not have to visit them, because it was by law made the duty of the trustees to report the number of school children to him. It is true the law requires him, at least once during each year, to "visit each district school of his county, and investigate and direct the operations of the school system, and promote by addresses or otherwise the cause of common school education;" but the law does not say, either expressly or by implication, that his claim for services, which must be audited by the county judge, shall show that he has done so, or that he shall report whether he has done so to the Superintendent of Public Instruction. It is to be presumed that he has done his duty in these respects. It is urged, however, that the Legislature could not have intended to allow him three dollars for each school district for merely reporting its census, and that the pay is inordinate to the labor. It is not for us to judge of the reasonableness of the allowance, or whether proper policy dictated that the claim of the commissioner should show that he had performed the duties above named. We can only look to the legislative declaration. It has seen proper to fix a certain sum as pay for the performance of a certain duty; thus the law is written, and it must be obeyed.

The reporting of the school census is highly important, indeed absolutely essential, to the support of tho schools. The apportionment of the school fund

by the State Superintendent is based upon it; and the necessity for its being done may have induced a liberal allowance for the service by the Legislature.

Returning to the other objection, it can not be supposed that the Legislature, when it enacted the new law, intended that the commissioners who were then in office should remain so and perform the duties incident thereto without pay from that time until the qualification of the county superintendents, who, by its terms, were not even to be elected until the succeeding August. This would have been highly detrimental to the State. It has no more important interest to foster than the education of its children. Intelligence is the very life-blood of a republican government. To deprive the commissioner of pay would have led to the vacation of the office. As already stated, they were required to remain in office. They were expected to perform the labor incident to it. It was highly necessary and important that they should do so; and, considering all the provisions of the new law, it is plain that the Legislature intended to, and in fact did in effect, say to them: "Although this law takes effect from its passage, yet from the very necessity of the case you are to remain in office upon the terms and conditions prescribed by the pre-existing law until your successors are elected and qualified."

Judgment affirmed.